IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BLANCHE JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| versus | § | CIVIL ACTION NO. H-06-1965 |
| | § | |
| MICHAEL J. ASTRUE, Commissioner | § | |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court are Plaintiff Blanche Jones' ("Jones") motion for summary judgment and Defendant Michael J. Astrue's ("Commissioner")[1] response to Jones' motion for summary judgment. Jones appeals the decision of the Commissioner denying her widow's insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. §§ 402(e), 423. Having reviewed the pending motion, the submissions of the parties, the pleadings, the administrative record, and the applicable law, this Court is of the opinion that Jones' Motion for Summary Judgment (Docket Entry No. 11) should be granted, the Commissioner's decision denying Jones benefits should be reversed, and the case should be remanded to the Social Security Administration ("SSA") for further proceedings pursuant to "sentence four" of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

[1] Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should therefore be substituted for Jo Anne B. Barnhart (former Commissioner) and Linda S. McMahon (interim acting Commissioner) as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.      *Background*__**

On July 30, 1999, at age 67, Jones filed an application for widow's insurance benefits with the SSA, alleging eligibility for benefits on the record of her deceased husband, Musa Alami ("Alami").[2] (R. 36). In her application, Jones alleged to be the common-law wife of Alami, and requested widow's benefits starting February 12, 1998, the date that he died. (R. 36-37). Jones' application claimed that she and Alami entered into a common-law marriage in Texas on December 15, 1992. (R. 37).

After being denied benefits initially and on reconsideration (R. 45, 134), on June 25, 2001, Jones requested an administrative hearing before an Administrative Law Judge ("ALJ") to review the decision. (R. 134). On July 16, 2004, an ALJ dismissed Jones' request for a hearing. (R. 23). Jones asked the Appeals Council to review the dismissal order, which was denied on January 22, 2005. (R. 134). Shortly thereafter, on January 27, 2005, the Appeals Council set aside its earlier action. (R. 23, 134-135). After considering additional information, the Appeals Council vacated the ALJ's dismissal order and remanded the case for further proceedings. (R. 134-135).

A hearing was held on September 19, 2005, in Houston, Texas, at which time ALJ Harry L. Williams, Jr. heard testimony from Jones, Marilyn Ashley (Jones' daughter), Nicole Jones (Jones' granddaughter), Chloe Veal (Jones' granddaughter), Christine Veal (Jones' daughter-in-law), and Helen Malbrue (a friend of Jones and Alami). (R. 155-182). In addition, Jones submitted a statement regarding her relationship with Alami as well as statements from Curtis Jones (her former brother-in-law), Marilyn Ashley (Jones' daughter), and Willie Batiste (a friend

---

[2] At the time of Jones' application for benefits on the record of Alami, she was already receiving widow's benefits on the record of her previous husband, Audrey Jones. (R. 149). She continues to receive those benefits. (R. 149). The Commissioner claims Jones listed herself as unmarried on her application for benefits on the record of Audrey Jones in May 1992; however, that application is not part of the record.

of Jones and Alami). (R. 106-112). The record further reflects that the Commissioner obtained information from Eula Blue (a friend) and William Guidry (a neighbor) who both stated that Jones and Alami held themselves out as husband and wife. (R. 56). Also submitted in the record was a letter from Mary Armstrong, an administrative assistant with a healthcare company, which stated that Alami was listed as Jones' next-of-kin and that the two had lived together for at least four years. (R. 57-58). According to Jones, Alami's relatives did not speak English and she had no contact with them. (R. 63). The record reflects that attempts were made to contact Alami's relatives, but no response was received. (R. 66).

In a decision dated September 21, 2005, the ALJ granted Jones' application for widow's insurance benefits, finding Jones to be the common-law wife of Alami. (R. 23-25). Upon its own motion for review, on April 11, 2006, the Appeals Council overruled the ALJ's decision and held that Jones was not entitled to widow's insurance benefits. (R. 6-11). The Appeals Council concluded that: (1) the record does not support a conclusion that Jones was not married to "Mr. Raphael" on December 15, 1992, the date of the alleged common-law marriage; (2) the record does not support a conclusion that Alami was not married to someone else on December 15, 1992; and (3) Alami did not have the capacity to enter into a common-law marriage on December 15, 1992, and thus had not agreed to be married, as required by Texas statute. (R.10-11).

By letter dated June 1, 2006, Jones requested that the Appeals Council review its decision, reopen Jones' appeal, and extend the period within which Jones must file her federal lawsuit. (R. 15). On August 8, 2006, the Appeals Council denied Jones' request or reopening, and extended the time in which Jones could file a federal lawsuit. (R. 13-14).

Jones filed this case on June 9, 2006, contesting the Commissioner's denial of her benefits. *See* Docket Entry No. 1.

**II.**     *Analysis*

    **A.**     *Statutory Bases for Benefits*

The SSA provides that, under certain circumstances, the surviving spouses of deceased wage earners may receive widow's insurance benefits on the record of the deceased wage earner. *See* 42 U.S.C. § 402(e). To receive widow's benefits, an applicant must demonstrate that she is the widow of the insured wage earner based on the laws of the State where the insured had a permanent home at the time of his death. *See* 20 C.F.R. § 404.345. To be considered a "widow," the applicant must have been "married to [the deceased wage earner] for a period of not less than nine months immediately prior to the day on which he died[.]" *See* 42 U.S.C. § 416(c)(1)(E). To determine whether an applicant and an insured wage earner had a valid marriage, the Court looks to the laws of the State in which the insured individual was domiciled. *See* 42 U.S.C. § 416(h)(1)(A).

    **B.**     *Standard of Review*

        **1.**     *Summary Judgment*

The court may grant summary judgment under Fed. R. Civ. P. 56(c) when the moving party is entitled to judgment as a matter of law because there is no genuine issue as to any material fact. The burden of proof, however, rests with the movant to show that there is no evidence to support the nonmoving party's case. If a reasonable jury could return a verdict for the nonmoving party, then a motion for summary judgment cannot be granted because there exists a genuine issue of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

An issue of fact is "material" only if its resolution could affect the outcome of the case. *See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991). When deciding whether to grant a motion for summary judgment, the court shall draw all justifiable inferences in favor

of the nonmoving party, and deny the motion if there is some evidence to support the nonmoving party's position. *See McAllister v. Resolution Trust Corp.*, 201 F.3d 570, 574 (5th Cir. 2000). If there are no issues of material fact, the court shall review any questions of law *de novo*. *See Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Once the movant properly supports the motion, the burden shifts to the nonmoving party, who must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir. 2000).

### 2. *Administrative Determination*

Judicial review of the Commissioner's denial of widow's benefits is limited to whether the final decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). "Substantial evidence" means that the evidence must be enough to allow a reasonable mind to support the Commissioner's decision; it must be more than a mere scintilla and less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 91971); *Masterson*, 309 F.3d at 272; *Brown*, 192 F.3d at 496.

When applying the substantial evidence standard on review, the court "scrutinize[s] the record to determine whether such evidence is present." *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001) (citations omitted). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *See Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). Alternatively, a finding of no substantial evidence is appropriate if no credible evidentiary choices support the decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

The court may not, however, reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner. *See Masterson*, 309 F.3d at 272. In short, "[c]onflicts in the evidence are for the Commissioner and not the courts to resolve. *Masterson,* 309 F.3d at 272.

### C. *Administrative Decisions*

#### 1. *ALJ*

Applying Texas law, the ALJ determined that Jones had a common-law marriage to Alami. (R. 23-24). The ALJ found that Jones and Alami were free to marry; agreed to be husband and wife; consummated the marriage by living together; and, held themselves out publicly as husband and wife. (R. 24). Thus the ALJ concluded that Jones should be granted widow's benefits, on the record of Alami, since February 12, 1998. (R. 24).

#### 2. *Appeals Council*

Upon review, the Appeals Council determined that there were two technical deficiencies with the ALJ's determination. Specifically, the ALJ erred in determining that: (1) the month of entitlement to benefits began in February 1998, because entitlement is limited to six months retroactive to the application filed on July 30, 1999; and (2) the ALJ failed to determine the date on which Jones and Alami entered into a common-law marriage. (R. 9).

The Appeals Council also found that the ALJ did not consider evidence that did not support his decision that there was a common-law marriage. Specifically, at the time of Alami's application for disability insurance benefits (1989), a doctor determined that he was incapable of handling his funds; thus, the SSA appointed his niece to be his representative payee. His niece continued to be his representative payee until 1996, after Jones and Alami allegedly entered into a common-law marriage in 1992. (R. 9-10). Based on this information, the Appeals Council found that it did not

6

appear that Alami had the capacity to enter into a common-law marriage in 1992. (R. 10). The Appeals Council also found that when Jones filed an application for a duplicate social security card on September 23, 1996, she indicated that she used the surname Raphael, suggesting that she entered into a marriage previously not identified. (R. 10). Further, based on the fact that Alami allegedly had a previous marriage, the details of which are not alleged or documented, and based on the fact that Jones may have had a previously unidentified marriage, the record cannot support a conclusion that Jones and Alami were free to enter into a common-law marriage with each other. (R. 10).

In this regard, the Appeals Council made the following findings:

1. The record does not support a conclusion that the claimant was not married to Mr. Raphael on December 15, 1992, the date of the alleged common-law marriage between the claimant and Mr. Musa Alami.

2. The record does not support a conclusion that Mr. Alami was not married to someone else on December 15, 1992.

3. Mr. Alami did not have the mental capacity to enter into a common-law marriage on December 15, 1992, and thus he did not agree to be married within the meaning of Texas law.

4. The claimant and Mr. Alami may have lived together during some or all of the period after December 15, 1992 until his death on February 12[sic], 1998.

5. The claimant and Mr. Alami may have held themselves out as married during some or all of the period after December 15, 1992 until his death on February 12[sic], 1998.

(R. 10-11). The Appeals Council determined that Jones was not entitled to widow's insurance benefits on the record of Alami. (R. 11).

**D.**     *Issues Presented*

The issue in this case is whether Jones is Alami's widow. Jones maintains that the Appeals Council misinterprets Texas law regarding common-law marriage. Additionally, Jones contends that the Appeals Council erred in finding that Jones was not married to "Mr. Raphael." Jones also alleges that the Appeals Council erred in holding that the record does not support a conclusion that Alami was not married to someone else on December 15, 1992. Finally, Jones argues that the Appeals Council erred in holding that Alami did not have the capacity to enter in to a common-law marriage on December 15, 1992. *See* Docket Entry Nos. 11 and 14. The Commissioner contends that substantial evidence supports the Commissioner's decision the deny widow's benefits to Jones. *See* Docket Entry No. 13.

**E.**     *Application of Texas Law*

Because Jones and Alami never had a formal marriage ceremony, under federal regulations, Jones must demonstrate the existence of a common-law marriage, which requires evidence that: (1) the marriage was considered valid under the appropriate state law, (2) the parties were free to marry, (3) the parties considered themselves married, and (4) the parties lived together as husband and wife. *See* 20 C.F.R. § 404.726.

In this case, it is undisputed that Texas law applies to determine whether Jones was Alami's widow. In Texas, to establish a common-law marriage, a party must prove that: (1) the parties agreed to be married, (2) after the agreement the parties lived in Texas as husband and wife, and (3) the parties represented to others that they were married. *See* TEX. FAM. CODE ANN.

8

§ 2.401(a)(2). The proponent of a common-law marriage may prove an agreement to be married by circumstantial as well as direct evidence. *See Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993).

### 1. *Burden of Proof*

Jones asserts that the Commissioner misinterprets Texas law in placing the burden on Jones to demonstrate that she was not married to "Mr. Raphael" on December 15, 1992. Similarly, Jones asserts that the Commissioner erred in placing the burden on Jones to demonstrate that Alami was not married to another person on December 15, 1992. Jones argues that the Commissioner bears the burden of disproving that her marriage to Alami was valid. The Commissioner contends, however, that *prior* to trying to establish an informal marriage in this case, Jones had to demonstrate that she was capable of entering into a valid marriage. The Commissioner argues that her alleged common-law marriage to Alami could not be valid if Jones were legally married to Mr. Raphael or if Alami was married to someone else on December 15, 1992.

Section 1.101 of the Texas Family Code provides:

> [I]t is the policy of this state to preserve and uphold each marriage against claims of invalidity unless a strong reason exists for holding the marriage void or voidable. Therefore, *every marriage entered into in this state is presumed to be valid unless expressly made void by Chapter 6 or unless expressly made voidable by Chapter 6 and annulled as provided by that chapter.*

TEX. FAM. CODE ANN. § 1.101 (emphasis added). Chapter 6 recognizes as *void* only those purported marriages that take place between parties who are too closely related, when one (or both) of the parties are already married to somebody else, between parties who are of the same gender, when one of the parties is a minor, and when the parties are related as stepparent and stepchild. *See* TEX. FAM. CODE ANN. §§ 6.201-6.205.

Here, the only ground for voidness alleged is prior undissolved marriage by Jones to "Mr. Raphael" or by Alami to an unidentified individual. (R. 10). In this regard, § 1.102 instructs as follows:

> [w]hen two or more marriages of a person to different spouses are alleged, *the most recent marriage is presumed to be valid* against each marriage that precedes the most recent marriage until one who asserts the validity of a prior marriage proves the validity of the prior marriage.

TEX. FAM. CODE ANN. § 1.102 (emphasis added). Applying §§ 1.101 and 1.102 of the Texas Family Code, Jones' marriage to Alami was presumed to be valid. As set forth by the ALJ, Jones testified at the administrative hearing along with five family members that Jones and Alami moved-in together in 1992, and they lived together at Alami's house until 1998. (R. 24, 162-163, 178-179). When Alami's house became damaged in 1998, they moved together to Jones' house until Alami died on February 12, 1998. (R. 24, 163-164). The testimony was uncontradicted that Jones and Alami held themselves out as "husband and wife." (R. 24, 55-58, 61-65, 163, 165, 168, 170-173, 177). Jones cared for Alami until he died. (R. 24, 163). The Commissioner, as the party attacking the validity of the marriage, had the burden to "introduce sufficient evidence, standing alone, to negate the dissolution of the prior marriage." *See Wood v. Paulus*, 524 S.W.2d 749, 758 (Tex. Civ. App..—Corpus Christi 1975, writ ref'd n.r.e.). The Commissioner did not meet this burden; instead, the Commissioner merely relies upon speculation regarding the existence of a prior undissolved marriage of Jones to a "Mr. Raphael,"[3] and an existing unidentified marriage of Alami.

---

[3] On her application for widow's insurance benefits, Jones listed "Blanche Raphael" as a name she had previously used. (R. 37). The Appeals Council complained that she "never explained the use of the name Raphael." (R. 8). As previously discussed, it was not Jones' burden to "explain" a prior name. In an affidavit in support of her request for reopening (R. 18) and in an affidavit attached as an exhibit to her motion for summary judgment, Jones states she used the name Raphael as a child because it was the name

The Commissioner has produced no evidence that Jones' or Alami's prior marriages were undissolved and the record does not reflect any evidence that the two were not free to marry. Jones, however, unequivocally testified at the administrative hearing that she was not married at the time she and Alami began living together. (R. 173-174). Jones also submitted a report from a psychological evaluation, which stated that Alami's brother stated that Alami was divorced. (R. 128). Consequently, there is insufficient evidence in the record to support the Appeals Council's finding that Jones and Alami were not legally capable of entering into a common-law marriage.

### 2.   *Mental Capacity*

Jones next argues that the Appeals Council erred in finding that Alami did not have the mental capacity to enter into a common-law marriage on December 15, 1992, and, thus, had not agreed to be married, as required by § 2.401 of the Texas Family Code. Jones asserts that under Texas law a marriage commenced with one party suffering mental incapacity is voidable, not void *ab initio*. *See* TEX. FAM. CODE ANN. § 6.108.[4] The Commissioner argues that Jones has failed to show that she had a valid informal marriage according to Texas law.

As set forth above, Jones satisfied her burden to show a presumption of validity as to her common-law marriage to Alami. To the extent the Appeals Council argued that Alami lacked capacity to enter into a marriage on December 15, 1992, because he was found to require a representative payee for his Social Security benefits, this argument, at best, would be grounds to

---

her mother used for several years. *See* Docket Entry No. 11, at Exh. A.

[4] Section 6.108, entitled "Mental Incapacity," permits annulment of a marriage by suit, in the event one party to the marriage "did not have the mental capacity to consent to the marriage . . . because of a mental disease or defect[.]" *See* TEX. FAM. CODE ANN. § 6.108.

11

show the marriage was voidable.[5] The Commissioner, however, has not shown that suit was filed by either party to have the marriage annulled. Moreover, in 1996, Alami's alleged incapacity was removed and he began managing his own benefits. (R. 90-93). It is undisputed that Alami and Jones believed themselves to be married until his death in 1998. (R. 98, 166). Thus, assuming, *arguendo*, that Alami was not mentally capable at the time the marriage began in 1992, when Alami regained capacity in 1996 and continued to live with Jones and fulfill the marriage commitments, the marriage became no longer voidable and was valid. There is no evidence in the record that Alami was mentally incapable of entering into a marriage after 1996. Consequently, the Commissioner's decision is not supported by substantial evidence.

### 3. *Agreement to be Married*

The Commissioner's basic argument is that Alami and Jones did not validly agree to be married. The Commissioner argues that in Jones' initial documents that she filed for widow's benefits, she noted that although Alami desired to marry her, she had no desire to marry. (R. 58, 61). In addition, Jones stated that there was never a promise that a ceremonial marriage would be performed. (R. 62). The Commissioner contends that although Alami and Jones lived together and allegedly held themselves out to be married, they had no joint tax returns, deeds, contracts or insurance policies executed in concert. Further, they did not have a joint bank account. (R. 63). To the extent the evidence demonstrates that Alami added Jones as a joint card holder on an American

---

[5] In 1989, Alami's niece was designated to be Alami's representative payee for his Social Security benefits because Alami suffered from organic brain syndrome ans was forgetful and sometimes disoriented. (R. 89). The Commissioner appears to equate Alami's inability to manage his Social Security benefits to an inability to form a binding contract; although there is a vast distinction, the Commissioner offers no explanation of such a comparison of mental capacities.

Express account in 1992, the Commissioner argues that Alami lacked mental capacity at that time. (R. 65).

Although the Commissioner argues that Jones' own statement in her initial documents that she did not want to be legally married does not support her allegations that she had a common-law marriage, Jones' statement can also be interpreted as equating "legally" with "ceremonially." (R. 61). Jones and others unequivocally stated that Jones and Alami held themselves out as man and wife. (R. 24, 55-58, 61-65, 163, 165, 168, 170-173, 177). The direct testimony and circumstantial evidence presented in this case amply demonstrate the agreement of Jones and Alami to be married. Because the Commissioner failed to overcome the presumption of validity of Jones' common-law marriage, the is insufficient evidence to support its decision.

### III.   *Conclusion*

It is, therefore

**ORDERED** that Jones' Motion for Summary Judgment (Docket Entry No. 11) is **GRANTED**. It is further

**ORDERED** that the case is **REVERSED** and **REMANDED** to the SSA for a new hearing to re-evaluate the evidence in this case, applying the proper burden of proof, and to determine if Jones is entitled to widow's insurance benefits, and, if so, from what date such benefits commence.

**SIGNED** at Houston, Texas on this the 13th day of August, 2007.

Calvin Botley
United States Magistrate Judge